UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROL LENZINI,<br><br>    Plaintiff,<br><br>v.<br><br>DCM SERRVICES, LLC,<br><br>    Defendant. | Case No. 4:20-cv-07612-YGR<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 26 |

Plaintiff Carol Lenzini brings this action against defendant DCM Services, LLC ("DCM"). Lenzini brings two claims for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code § 1788 *et seq.*

Now before the Court is DCM's motion to dismiss the operative first amended complaint under Federal Rules 12(b)(1) and (b)(6). (Dkt. No. 26.) Lenzini opposes the motion. (Dkt. No. 25.) The matter was fully briefed by the parties. (Dkt. No. 26.)[1]

Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court **GRANTS** the motion to dismiss.

I.  **BACKGROUND**[2]

The Court summarizes the allegations relevant to the disposition of this motion.

DCM is a debt collector. Lenzini previously applied for and was approved for a Kohl's Department Stores, Inc. ("Kohl's") credit card. Lenzini used this credit card to make purchases for personal and household purposes. At some point, Lenzini fell behind on her payments to the

---

[1] The Court previously vacated the motion hearing on the motion to dismiss after conducting a preliminary review of the motion and determining that it was suitable for disposition on the papers. (Dkt. No. 29.)

[2] DCM requests that the Court take judicial notice of several similar complaints filed in district courts within the Ninth Circuit. (Dkt. No. 21.) The Court **GRANTS** the request for judicial notice. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) ("A court may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment.").

credit card account (the "subject debt"), and was thereafter placed with DCM for collection.

DCM sent Lenzini a collection letter dated March 18, 2020. This letter listed Capital One, N.A. ("Capital One") as the "Creditor" and the "Original Creditor" to whom Lenzini owed the subject debt. The letter also identified Kohl's as DCM's client, and further identified the debt as belonging to "The Kohl's Credit Card". First Amended Complaint ("FAC") ¶ 20. Lenzini provides a snapshot of the relevant letter in the operative complaint:

[Image of DCM Services collection letter dated March 18, 2020, addressed to Carol Lenzini, listing Creditor: Capital One N.A., Original Creditor: Capital One N.A., The Kohl's Credit Card Account ******4547, Reference #: 36795156, Current Unpaid Balance: $543.19, with standard FDCPA validation notice language.]

*Id.*

Lenzini further highlights that DCM did not specifically identify Capital One as the "**current creditor,**" instead listing Capitol One merely as the "creditor." *Id.* ¶ 22 (emphasis in original). Lenzini asserts that the exclusion of this information caused her confusion: without the explicit mention of a "current creditor," she was unable to determine whether she owed her debt to Kohl's or to Capitol One. *Id.* ¶¶ 25-27. Lenzini alleges she was further confused by DCM's instruction to pay DCM directly, rather than Capital One. *Id.* ¶ 29. Finally, Lenzini claims that this confusion led to her decision not to pay the subject debt. *Id.* ¶ 32.

Based on the foregoing, Lenzini seeks to certify a class on two counts: one count for violation of 15 U.S.C. section 1692g of the FDCPA, and one count for violation of Cal. Civ. Code section 1788.17 of the analogous California Rosenthal Act. Subject matter jurisdiction is alleged

on federal question jurisdiction pursuant to 28 U.S.C. section 1331, with supplemental jurisdiction over the Rosenthal Act claim.

## II.  LEGAL STANDARD

DCM brings the motion to dismiss under Rules 12(b)(1) and (b)(6).

Rule 12(b)(1) provides that an action may be dismissed for lack of subject matter jurisdiction.  Federal courts are of "limited jurisdiction" and plaintiff bears the burden to prove the requisite federal subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994).  A challenge pursuant to Rule 12(b)(1) may be facial or factual. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  A facial 12(b)(1) motion involves an inquiry confined to the allegations in the complaint, whereas a factual 12(b)(1) motion permits the court to look beyond the complaint to extrinsic evidence. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).  Thus, in a factual 12(b)(1) motion, the Court may consider evidence outside the complaint to resolve factual disputes in the process of determining the existence of subject matter jurisdiction. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).  Courts consequently need not presume the truthfulness of a plaintiff's allegations in such instances. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).  "Dismissal for lack of subject matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as to not involve a federal controversy." *Steel Co. v. Citizens for a Better Env.*, 523 U.S. 83, 89 (1998) (quoting *Oneida Indian Nation of N.Y. v. Cty. Of Oneida*, 414 U.S. 661, 666 (1974)).

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199–1200 (9th Cir. 2003).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). All allegations of material fact are taken as true and construed in the light most favorable to the plaintiffs. *Johnson v. Lucent Techs., Inc.,* 653 F.3d 1000, 1010 (9th Cir. 2011).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a

3

claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  This "facial plausibility" standard requires the plaintiffs to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.  While courts do not require "heightened fact pleading of specifics," plaintiffs must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor.  *See Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir. 1987).  However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.,* 536 F.3d 1049, 1055 (9th Cir. 2008).

### III.   ANALYSIS

DCM moves to dismiss on two grounds: (1) that there is a lack of subject matter where Lenzini's allegations do not establish a *per se* injury-in-fact; and (2) that Lenzini cannot state a claim where the letter is clear as to Capitol One being both the original creditor and the current creditor.  The Court addresses each in turn below.

#### A.   Subject Matter Jurisdiction

The parties dispute whether Lenzini has failed allege a sufficient Article III injury for the existence of subject matter in this action.

In general, an injury must be "concrete and particularized" to the moving party to meet the threshold for Article III standing.  *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1111 (9th Cir. 2017).  To determine whether an alleged injury qualifies, the Court employs a two-step test: "(1) whether the statutory provisions at issue were established to protect the plaintiff's concrete interests (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests." *Patel v.*

*Facebook, Inc.*, 932 F.3d 1264, 1270-71 (9th Cir. 2019) (quoting *Spokeo*, 867 F.3d at 1113); *see also Campbell v. Facebook, Inc.,* 951 F.3d 1106, 1119 n. 8 (9th Cir. 2020), 951 F.3d at 1119 n.8 (explaining that "procedural obligations . . . sometimes protect individual interests," while the violation of "a substantive right" always causes concrete harm (citation omitted)). To determine whether an intangible injury is sufficiently concrete, a court must consider both history and the judgment of Congress. *Spokeo*, 136 S. Ct. at 1549.

Here, in discussing the existence and sufficiency of the alleged injury, the parties argue over the applicability of a recent Ninth Circuit case, *Adams v. Skagit Bonded Collectors, LLC*, 836 F. App'x 544 (2020), which recently addressed a substantively similar FDCPA claim. *See id.* at 545 ("Adams allegedly received debt collection letters from Skagit Bonded Collectors that failed to clearly identify his current creditor. Adams argues that that these letters violated the FDCPA's affirmative disclosure requirement . . . and its prohibition on false or misleading representations . . . . Adams alleges that he was harmed as a result because, 'upon reading the letter, [he] was unsure of who the current creditor was.'").

In *Adams*, the Ninth Circuit applied the above two-step test, finding under the first step that: (1) the closest common law analogue to the FDCPA claim was fraud; and (2) congressional judgment was concerned with "genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her response" to a debt collector's communication. *Id.* at 546. The Ninth Circuit noted that statements "that induce no reliance do not impede a consumer's ability to intelligently respond to a debt collector" and thereupon concluded that "[b]ecause not every misleading statement in a debt collection letter necessarily threatens the recipients concrete interests, we consider the alleged violation here more procedural than substantive." *Id.* (citing *Campbell* at 951 F.3d at 1119 n.8). The Ninth Circuit further expressly rejected the appellant's theory that he had alleged "an informational injury that should be treated as substantive," stating that the doctrine of informational injury does not apply to FDCPA violations. *Id.* at 546 n.2.[3]

---

[3] In total, the Ninth Circuit stated:

> But the doctrine of informational injury does not apply here [to the FDCPA]. The FDCPA protects a consumer's right to understand,

5

Under the second step, the Ninth Circuit ultimately found that the appellant had not alleged actual harm or a material risk of harm to the interests protected by the FDPCA. Specifically, "[n]othing in the [c]omplaint suggests he took or forewent any action because of the allegedly misleading statements in the letter." *Id.* at 547. Instead, based on the threadbare allegation of confusion, the Ninth Circuit noted that "[w]ithout more, confusion does not constitute an actual harm to [appellant's] concrete interest." *Id.* Thus, the Ninth Circuit found that the appellant lacked Article III standing to bring the action.

Lenzini advances two arguments with regard to subject matter jurisdiction: first, citing authority primarily from the Seventh Circuit, Lenzini argues that she has suffered an informational injury sufficient to confer Article III standing. Second, Lenzini distinguishes *Adams* by noting that she alleged more than mere confusion: instead, she alleges (1) confusion as to the current creditor by the omission of the modifier "current" in the letter head, in addition to the letter's reference to Kohl's as a client; and (2) a forwent action resulting from the confusion, which led her to not make payment on the amount due in the letter.

Lenzini does not persuade. First, Lenzini does not *directly* dispute the analysis in *Adams*. Instead, relying on authority primarily from the Seventh Circuit, Lenzini argues that the Court should adopt out of circuit non-binding authority to find that she has Article III standing because she suffered an informational injury. *Adams* is clear, however, that the doctrine of an informational injury does not apply to FDCPA claims such as the one alleged by Lenzini. *Id.* at 546 n.2. Thus, the Court rejects Lenzini's cited out of circuit authority in light of *Adams*.

Second, while Lenzini has alleged more than the appellant in *Adams*, Lenzini's allegation is still deficient. In total, the allegation discussing Lenzini's reliance on and thereafter forwent action resulting from the letter reads: "Due to [DCM's] failure to identify the current creditor,

---

> make informed decisions about, and participate fully and meaningfully in the debt collection process. Even though these rights necessarily involve the dissemination of information, they are not thereby *tantamount* to a right to information per se. We therefore decline to extend the doctrine of informational injury to the violations alleged.

*Id.* (internal quotation marks and citations omitted) (emphasis in original).

[Lenzini] did not make a payment on the subject debt as the omission of the identify of the current creditor rendered it impossible for [Lenzini] to determine whom she is ultimately paying." FAC ¶ 32. Beyond this scant allegation, Lenzini provides no further detail or action undertaken. Lenzini does not allege she would have made payment to Capitol One but believed Kohl's might have been more appropriate (or even vice versa). Nor does she adequately explain or allege *how* it was confusing where Capitol One was listed as both the "original creditor" and the "creditor" on the letter sent from DCM. Thus, Lenzini's allegations are deficient in explaining Lenzini's reliance or demonstrating any risk of actual confusion resulting from the letter.

Accordingly, the motion to dismiss is appropriately **GRANTED** on this ground. Were this the only flaw in the complaint, the Court would grant leave to amend to add additional allegations of confusion and reliance in the complaint. *See* Fed. R. Civ. P. 15(a) (providing that a trial court should "freely give leave when justice so requires"). However, in light of the analysis below, the Court concludes that such amendment would be futile. *See e.g.*, *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989) ("Leave to amend need not be given if a complaint, as amended, is subject to dismissal."); *see also Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

### B. Failure to State a Claim

In the alternative, DCM moves to dismiss the complaint for failure to state a claim as to the section 1692g FDCPA claim.

"Section 1692g(a)(2) of the FDCPA requires debt collectors, within five days of an 'initial communication' concerning a debt, to 'send the consumer a written notice containing . . . the name of the creditor to whom the debt is owed.'" *Valentin v. Grant Mercantile Agency, Inc.*, No. 1:17-cv-01019-AWI-SKO, 2017 WL 6604410, at *4 (E.D. Cal. Dec. 27, 2017) (citing 15 U.S.C. § 1692g(a)(2)). While the FDCPA does not require a debt collector to use specific "'magic words,' it does require it to effectively convey to the debtor the name of the current creditor." *Dix v. Nat'l Credit Sys.*, No. 2:16-cv-3257-HRH, 2017 WL 4865259, at *3 (D. Ariz. Oct. 27, 2017); *see also Smith v. Simm Assocs., In*c., 926 F.3d 377, 381 (7th Cir. 2019) ("the FDCPA does not require use of any specific terminology to identify the creditor").

7

"Whether a debt collector's conduct violates sections 1692e and 1692g of the FDCPA requires an objective analysis that takes into account whether the least sophisticated debtor would be misled by the communication." *Campbell v. Am. Recovery Servs.*, Case No.: 2:15-cv-09079-ODW-AGR, 2016 WL 3219866, at *2 (C.D. Cal. June 8, 2016) (*citing Gonzales v. Arrow Fin. Servs., Inc.*, 660 F.3d 1055, 1061 (9th Cir. 2011)).  "The 'least sophisticated debtor' standard is 'lower than simply examining whether particular language would deceive or mislead a reasonable debtor.'" *Gonzalez*, 660 F.3d at 1061-62.  "The standard is 'designed to protect consumers of below average sophistication or intelligence,' or those who are 'uninformed or naive,' particularly when those individuals are targeted by debt collectors." *Id.* at 1062.  However, "[a] debt collection letter's potential to mislead the least sophisticated consumer must be assessed based on the entirety of the letter and thus a court should not myopically focus on one aspect of the letter when other language in the letter dispels such potential." *Jones v. Synergetic Commc'n, Inc.*, No. 18-CV-1860-BAS-RBB, 2018 WL 6062414, at *7 (S.D. Cal. Nov. 20, 2018) (citing *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 430 (3d Cir. 2018)).

Here, as alleged and reflected in the snapshot provided in the operative complaint, the letter states that Capitol One is both the "creditor" and the "original creditor."  The FDCPA does not require the use of any specific terminology or "magic words" in identifying the creditor, but it is clear even employing the 'least sophisticated debtor' standard that the letter sent by DCM appropriately conveys that Capitol One is the creditor of the debt at issue.  Indeed, by common sense in reviewing the letter, "creditor" must mean the "current" or "present" creditor when read in connection with the "original creditor" label below it.

Notwithstanding the foregoing, Lenzini avers that the letter fails to satisfy the FDCPA where the letter (1) does not *specifically* use any modifying language to denote that Capitol One is the *current* creditor, and (2) refers to Kohl's as a client in the text of the letter renders the letter confusing despite the identification of Capitol One as both the "creditor" and "original creditor."

Neither ground persuades.  First, the FDCPA does not require specific language to convey the current creditor to a consumer.  Indeed, courts that have considered similar language used in such letters have found that it adequately conveys the "creditor" under the FDCPA—even at the

8

motion to dismiss stage. *See Cunningham v. Transworld Sys., Inc.*, No. 1:20-cv-01364-JRS-DLP, 2020 WL 7047076, at *2 (S.D. Ind. Dec. 1, 2020) ("Without any modifier, 'creditor' here logically must refer to the present creditor. Grammatical construction dictates as much."); *id.* ("Common sense, if not the process of elimination, dictates, then, that Orion Portfolio Services II LLC's designated status as "Creditor" means the current creditor." *Id.* at *2); *see also Schuerkamp v. Afni, Inc.*, No. 10-6282-HO, 2011 WL 5825969, at *3 (D. Or. Nov. 16, 2011) (D. Ore. 2011) (granting defendants' motion for summary judgment, where the letter did not violate Section 1692g(a)(2) where asserted "Creditor" in a table heading, without either "original" or "current" as a modifier). As noted, common sense here would similarly suggest that Capitol One is the current creditor when the letter is read as a whole, where the letter further identifies Capitol One as the original creditor. Thus, the Court similarly concludes that the language of DCM's letter satisfies the requirements of the FDCPA.

Second, the reference to Kohl's as a client does not render the identification of Capitol One as a creditor inadequate under the FDCPA. Lenzini does not allege or explain how one passing reference to Kohl's as a client of DCM manufactures confusion over the specific identification of Capitol One as both a creditor and original creditor of the subject debt. Indeed, the letter does not identify Kohl's as an entity willing to accept payment, nor is Kohl's identified as seeking payment on the subject debt. Other courts have rejected similar arguments at the motion to dismiss stage when considering situations where a letter references another entity or client. *See Haynes v. Allied Interstate, LLC*, No. 4:14CV3130, 2015 WL 429800, at *3–4 (D. Neb. Feb. 2, 2015) (granting motion to dismiss and rejecting the reference to client as creating confusion, noting that while defendant "might have further explained the relationship . . . the FDCPA did not require debt collector to do so in the collection letter"); *Dokes v. LTD Fin. Servs., L.P.*, 328 F. Supp. 3d 1270, 1285-86 (N.D. Ala. 2018) (holding that the letter's explicit identification of JH Portfolio as the current creditor without any explanation as to the relationship between the entities is sufficient.). The reference to Kohl's in DCM's letter is therefore not confusing, nor does it render the

identification of Capitol One as a creditor inadequate under the FDCPA.[4]

Thus, the motion to dismiss is appropriately and alternatively **GRANTED** on this ground. The FDCPA claim is therefore appropriately **DISMISSED WITH PREJUDICE**. Given that subject matter jurisdiction is premised on federal question jurisdiction based on the FDCPA, which is now dismissed, the Rosenthal Act claim is appropriately **DISMISSED WITHOUT PREJUDICE**.

### IV.   CONCLUSION

Accordingly, for the foregoing reasons, the Court **GRANTS** the motion to dismiss: the FDCPA claim is **DISMISSED WITH PREJUDICE**, and the Rosenthal Act claim is **DISMISSED WITHOUT PREJUDICE**. Within five (5) business days, DCM shall file a proposed form of judgment agreed as to form by the parties in light of this Order.

This Order terminates Docket Number 20.

**IT IS SO ORDERED.**

Dated: May 26, 2021

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT JUDGE**

---

[4] As correctly explained by DCM, Lenzini's cases are distinguishable where the debt collector failed to specifically label the creditor in the letter. (*See* Reply (Dkt. No. 26) at 5-6 (citing *Steffek v. Client Servs., Inc*., 948 F.3d 761, 763 (7th Cir. 2020) (noting "a header stated only "RE: CHASE BANK USA, N.A." with an account number rather than using the label "creditor"); *Bentkowsky v. Benchmark Recovery, Inc*, No. 13-CV-01252-VC, 2014 WL 12579797, at *1 (N.D. Cal. Oct. 30, 2014), amended, No. 13-CV-01252-VC, 2015 WL 502948 (N.D. Cal. Feb. 3, 2015) (rejecting defendant's arguments that it was sufficient to identify creditor as the "Original Creditor" without specifying that it was also the "current" creditor.); *Valentin*, 2017 WL 6604410, at *5 (letter did not refer to current creditor with the word "creditor" only a "collection agency" and a "debt collector,"); *Sparkman v. Zwicker & Assocs., P*.C., 374 F. Supp. 2d 293, 300–01 (E.D.N.Y. 2005) (creditor not referred to with word "creditor" but rather described as "an agent of the current owner of your account."); *Dix*, 2017 WL 4865259, at *2 (noting "It is undisputed that Metro on 19th is the creditor to whom the alleged debt is owed, but the only place in the January 9 collection letter that Metro on 19th is mentioned is in the 're' line"); *McGinty v. Prof'l Claims Bureau, Inc*., No. 15CV4356SJFARL, 2016 WL 6069180, at *4 (E.D.N.Y. Oct. 17, 2016) (noting no dispute that the collection letters do not explicitly identify the Medical Providers using "terminology such as 'creditor,' 'account owner,' [or] 'original creditor ....' "); *Datiz v. Int'l Recovery Assocs., Inc*., No. 15CV3549ADSAKT, 2016 WL 4148330, at *11 (E.D.N.Y. Aug. 4, 2016) (letter did not label creditor with word "creditor"); *see also Suellen v. Mercantile Adjustment Bureau, LLC*, No. 12-CV-00916 NC, 2012 WL 2849651, at *6 (N.D. Cal. June 12, 2012) (granting motion to dismiss, holding that "[h]ere, [defendant's] letter clearly names [creditor] as the 'current creditor'" of the account")).)